GARRY LEE SKINNER, AND WIFE, JUDY COOPER SKINNER, INDIVIDUALLY AND ON BE-
HALF OF OTHER SIMILARLY SITUATED INDIVIDUALS v. PREFERRED CREDIT, A/K/A
PREFERRED CREDIT CORPORATION, A/K/A PREFERRED MORTGAGE COM-
PANY, a/k/a T.A.R. PREFERRED MORTGAGE CORPORATION; US BANK N.A.; US
BANK NA, ND; IMPERIAL CREDIT INDUSTRIES, INC.; ICIFC SECURED ASSETS
CORPORATION 1997-1; MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
1997-1; ICIFC SECURED ASSETS CORPORATION MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 1997-2; ICIFC SECURED ASSETS CORPORATION
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1997-3; EMPIRE FUND-
ING HOME LOAN OWNER TRUST 1998-1; CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORPORATION; CS FIRST BOSTON MORTGAGE
SECURITIES CORPORATION PREFERRED MORTGAGE ASSET-BACKED CER-
TIFICATES, SERIES 1996-2; CREDIT SUISSE FIRST BOSTON MORTGAGE
SECURITIES CORPORATION PREFERRED CREDIT ASSET-BACKED CERTIFI-
CATES, SERIES 1997-1; BANKERS TRUST COMPANY; GMAC-RESIDENTIAL
FUNDING CORPORATION; LIFE BANK; LIFE FINANCIAL HOME LOAN OWNER
TRUST 1997-3; UNITED MORTGAGE C.B., LLC; BANC ONE FINANCIAL SERV-
ICES; IMH ASSETS CORP. COLLATERALIZED ASSET-BACKED BONDS SERIES
1999-1; AND WILMINGTON TRUST COMPANY

No. 525A05

(Filed 20 December 2006)

### 1. Jurisdiction— personal—out-of-state mortgage trust— insufficient activity in North Carolina

Personal jurisdiction was not invoked under N.C.G.S. § 1-75.4(1) (activity within North Carolina) against a New York trust which holds mortgage loans. This trust (the 1991-1 Trust) was created after the origination of the loan, only about 3% of its loans relate to North Carolina indebtedness, and the loan payments are received by a separate servicer, not the Trust.

### 2. Jurisdiction— personal—out-of-state mortgage trust— things of value shipped from North Carolina

Transactions related to a mortgage loan in North Carolina which was later sold to a New York trust did not fall within N.C.G.S. § 1-75.4(5) (jurisdiction over things of value shipped from North Carolina) where the loan origination occurred before creation of the trust and the only things of value shipped from the state are the loan payments. All aspects of payment are handled by a separate servicer. There is no direct contact between plaintiffs and the trust.

[361 N.C. 114 (2006)]

### 3. Jurisdiction— personal—out-of-state mortgage trust—insufficient minimum contacts

A New York trust which held a loan secured by a deed of trust on North Carolina property had tenuous connections to North Carolina through N.C.G.S. § 1-75.4(6) (personal jurisdiction over claims arising from property within North Carolina) where the trust did not participate in the transaction giving rise to the deed of trust and did not directly collect payments from North Carolina residents. Even assuming that the long-arm statute authorizes jurisdiction, there are insufficient minimum contacts for exercise of that jurisdiction to satisfy due process. Plaintiffs argue for specific jurisdiction only, but the trust did not exist at the time the loan was created, was created as a passive repository for many loans, with only 3% having ties to North Carolina, the trust was created outside North Carolina, its day to day operations are in New York, the interest held by the trust is simply a beneficial interest that does not involve holding title to the property, and the loan payments are not received directly by the trust, but by a separate servicer. The trust serves as a depository for income derived, in part, from North Carolina loans. Plaintiffs' allegations stem from the execution of the original loan, not from the manner in which the servicer collects or allocates payments.

Justice TIMMONS-GOODSON dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 172 N.C. App. 407, 616 S.E.2d 676 (2005), affirming an order allowing defendants' motions to dismiss entered on 9 June 2004 by Judge Henry W. Hight, Jr. in Superior Court, Durham County. On 1 December 2005, the Supreme Court allowed plaintiffs' petition for writ of certiorari to review additional issues. Heard in the Supreme Court 16 March 2006.

*Shipman & Wright, LLP, by Gary K. Shipman and William G. Wright, for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Hada V. Haulsee and Bradley R. Johnson, for defendant-appellees Preferred Credit Trust 1997-1 and Deutsche Bank Trust Company Americas.*

*Christopher G. Browning, Jr., Solicitor General, and Gary R. Govert, Special Deputy Attorney General, for Attorney General Roy Cooper, amicus curiae.*

**SKINNER v. PREFERRED CREDIT**

[361 N.C. 114 (2006)]

*Center for Responsible Lending, by Seth P. Rosebrock, for Center for Responsible Lending, North Carolina Justice Center, Legal Services of Southern Piedmont, Inc., Pisgah Legal Services, Legal Aid Society of Northwest North Carolina, and Financial Protection Law Center, amici curiae.*

*Paul H. Stock, Counsel for North Carolina Bankers Association, amicus curiae.*

NEWBY, Justice.

The issues on appeal are: (1) whether the trial court may exercise personal jurisdiction over a nonresident trust which holds notes secured by deeds of trust on North Carolina real property; and (2) when the statutes of limitations begin to run for an action alleging a usurious loan origination fee and a violation of the Unfair and Deceptive Trade Practices Act ("UDTPA"). Based on the specific facts of this loan agreement and the relationship of the parties, we hold that there is no personal jurisdiction over the trust and accordingly, affirm the Court of Appeals. Because we resolve this case on the basis of personal jurisdiction, we do not reach the statute of limitations issues.

## I. BACKGROUND

Plaintiffs obtained a mortgage loan in the principal amount of $45,000.00 from defendant Preferred Credit Corporation ("Preferred Credit") on 22 January 1997. This loan was secured by a second deed of trust on plaintiffs' residence, under which First Carolina Bank was the trustee. The interest rate on the loan was 14.75% with a disclosed annual percentage rate of 16.902%, at a term of 180 months. The fees and costs charged to plaintiffs at closing were in the amount of $5,225.70, which included a $3,600.00 origination fee.

After closing, on 1 March 1997, Preferred Credit as seller entered into a Pooling and Servicing Agreement ("PSA") with Credit Suisse First Boston Mortgage Securities Corporation ("Credit Suisse") as depositor, Advanta Mortgage Corporation USA ("Advanta") as servicer, and Bankers Trust Company n/k/a Deutsche Bank Trust Company ˙Americas ("DB Trust Co.") as trustee. Under this PSA, the Credit Suisse First Boston Mortgage Securities Corporation Preferred Credit Asset-Backed Certificates, Series 1997-1 ("1997-1 Trust") was formed.

Under a related but separate Sale and Purchase Agreement ("SPA"), Credit Suisse purchased mortgage loans from Preferred Credit. Credit Suisse then assigned all rights under the SPA to the 1997-1 Trust, thereby transferring certain mortgage loans with borrowers in North Carolina and thirty-seven other states. North Carolina notes composed approximately 3% in number and value of the 3,537 loans held by the 1997-1 Trust.

The PSA appointed DB Trust Co. as trustee of the 1997-1 Trust (which is different from the trustee under plaintiffs' deed of trust, First Carolina Bank). David Co, vice president of DB Trust Co., averred that the purpose of the 1997-1 Trust (through its trustee DB Trust Co.) is "to hold mortgage loans . . . , receive income from the mortgage loans . . ., distribute payments received from the Servicer . . . , and issue certificates under the terms of the [PSA]." The 1997-1 Trust was formed and is administered under the laws of the State of New York. The 1997-1 Trust has no office other than the corporate offices of its trustee in California and New York; it has no employees; no employees or agents of the trust have traveled to North Carolina on its behalf; the trust does not "own, possess, lease, or use real estate" in North Carolina; it does not "engage in or transact any business"; it does not make contracts nor has it "contracted to supply any service or thing to anyone"; it has neither solicited nor entered into mortgage loan agreements in North Carolina; and it has not "directly collected payments, fees or commissions" from any borrowers associated with these loans.

Pursuant to the PSA forming the 1997-1 Trust, Advanta was named servicer of the mortgage loans eventually deposited with the 1997-1 Trust. Subsequently, Advanta transferred its servicing rights and responsibilities to Chase Manhattan Mortgage Corporation ("Chase"). By the terms of the PSA, the 1997-1 Trust's trustee is not authorized to directly collect payments on loans or enforce rights under the terms of the mortgage agreements; rather, the servicer Chase is authorized to "do any and all things in connection with . . . servicing and administration [of the loans] which the Servicer may deem necessary or desirable." In the event of default, the servicer Chase is authorized to "take such action as it shall deem to be in the best interest of the Certificateholders and the Certificate Insurer." Chase is empowered to determine "in its discretion," whether to foreclose upon a defaulted loan or to allow its assumption by another borrower. The PSA further provides that "[i]f reasonably required by the Servicer, the Trustee [DB Trust Co.] shall execute any powers of

attorney furnished to the Trustee by the Servicer and other documents necessary or appropriate to enable the Servicer to carry out its . . . duties."

Chase services the 1997-1 Trust's mortgage loans from its office in California. This includes submitting statements to the borrowers and receiving payments therefrom in its California office. After collecting payments in California, Chase deducts its servicing fee and then remits the balance collected on the loans held by the 1997-1 Trust to trustee DB Trust Co. in New York.

Plaintiffs filed the present action[1] alleging defendant Preferred Credit, the loan originator, charged excessive loan origination fees and usurious interest rates and violated the UDTPA. Multiple defendants were named in the complaint, but through the course of litigation and appeals, various defendants were dismissed. Preferred Credit was never served and has not made any appearance in this case. Chase, the loan servicer, is not a party to this action. The remaining defendants relevant to this appeal are the 1997-1 Trust and its trustee DB Trust Co.

The trial court dismissed plaintiffs' complaint against the 1997-1 Trust under Rules 12(b)(2) and 12(b)(6) of the North Carolina Rules of Civil Procedure. It also allowed DB Trust Co.'s motion to dismiss under Rules 12(b)(1) and 12(b)(6). The Court of Appeals, in a divided opinion, affirmed the trial court's dismissal of plaintiffs' claims against defendants on two alternative bases: (1) lack of personal jurisdiction; and (2) expiration of the applicable statutes of limitations. *Skinner v. Preferred Credit*, 172 N.C. App. 407, 616 S.E.2d 676 (2005). The dissenting opinion at the Court of Appeals only discussed the personal jurisdiction issue, *id.* at 415-27, 616 S.E.2d at 681-88 (Bryant, J., dissenting), and plaintiffs appealed as of right on that issue. Subsequently, we allowed plaintiffs' petition for writ of certiorari to review the statute of limitations issues. 360 N.C. 177, 626 S.E.2d 650 (2005).

## II. PERSONAL JURISDICTION

As a preliminary matter, we note that plaintiffs do not allege or argue that personal jurisdiction over the 1997-1 Trust could be based on contacts that trustee DB Trust Co. might have with North Carolina. Moreover, there is no evidence in the record regarding any

---

1. Plaintiffs filed this suit as a class action, but the record contains no indication that the trial court certified the class.

contacts DB Trust Co. has with North Carolina. Thus, analysis in this case will focus only on the 1997-1 Trust.

The question presented is whether North Carolina courts can exercise personal jurisdiction over the 1997-1 Trust. To determine whether a nonresident defendant is subject to personal jurisdiction in North Carolina, our Court employs a two-step analysis. First, jurisdiction over the action must be authorized by N.C.G.S. § 1-75.4, our state's long-arm statute. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 675, 231 S.E.2d 629, 630 (1977). Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Id.*

### A. Long-Arm Statute

Plaintiffs argue that three subsections of the long-arm statute grant jurisdiction over this action: N.C.G.S. § 1-75.4(1)(d), (5)(d), and (6)(b). None of these provisions authorizes the exercise of our jurisdiction.

### 1. Substantial Activity

[1] N.C.G.S. § 1-75.4(1) applies to defendants with a "Local Presence or Status" and grants personal jurisdiction "[i]n any action . . . in which a claim is asserted against a party who . . . [i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C.G.S. § 1-75.4(1)(d) (2005). This Court has stated that the enactment of N.C.G.S. § 1-75.4(1)(d) was "intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon*, 291 N.C. at 676, 231 S.E.2d at 630 (citing 1 McIntosh, *North Carolina Practice & Procedure* § 937.5 (Supp. 1970)).

However, by its plain language the statute requires some sort of "activity" to be conducted by the defendant within this state. Here, the 1997-1 Trust was created after the origination of plaintiffs' loan as a mechanism for holding notes, receiving income, and issuing related certificates. Only 114 (approximately 3%) of the 3,537 loans deposited at the inception of the 1997-1 Trust related to North Carolina indebtedness. These activities occurred outside of North Carolina, in California and New York. The only local activities that link the plaintiffs to the 1997-1 Trust are: (1) the loan itself, an activity completed by Preferred Credit before the creation of 1997-1 Trust; and (2) loan payments made by the plaintiffs, activities conducted by

a separate servicer, not by the 1997-1 Trust. Thus, even under N.C.G.S. § 1-75.4(1)(d)'s very broad terms, the facts of this case fail to invoke jurisdiction.

### 2. Things of Value

[2] N.C.G.S. § 1-75.4(5) addresses actions relating to "Local Services, Goods or Contracts" and authorizes jurisdiction over "any action which . . . [r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." N.C.G.S. § 1-75.4(5)(d) (2005). Essentially, this section of the long-arm statute reaches defendants who engage in commercial transactions with residents of this state. *See Johnston Cty. v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 95, 414 S.E.2d 30, 35 (1992) (describing N.C.G.S. § 1-75.4(5) as "authoriz[ing] the courts of North Carolina to exercise jurisdiction over a nonresident contracting within the state or contracting to perform services within the state").

In this case, the main transaction at issue, the origination of the mortgage loan, was conducted by Preferred Credit before the creation of the 1997-1 Trust. The only things "shipped from this State" are the loan payments, but the servicer Chase handles all aspects of these transactions. As noted previously, Chase does not act "at the order or direction" of the 1997-1 Trust but rather, is authorized to make its own decisions about how best to administer the loans it services, including discretion as to how to handle a default. There is no direct contact between plaintiffs and the 1997-1 Trust. Although this statutory grant of jurisdiction is far-reaching, the transactions in this case do not fall within its grasp.

### 3. Tangible Property

[3] N.C.G.S. § 1-75.4(6) concerns actions related to "Local Property" and permits our courts to hear cases which arise out of "[a] claim to recover for any benefit derived by the defendant through the use, ownership, control or possession by the defendant of tangible property situated within this State either at the time of the first use, ownership, control or possession or at the time the action is commenced." N.C.G.S. § 1-75.4(6)(b) (2005). Plaintiffs' mortgage was in the form of a deed of trust. A deed of trust is a three-party arrangement in which the borrower conveys legal title to real property to a third party trustee to hold for the benefit of the lender until repayment of the loan. *See* 1 James A. Webster, Jr., *Webster's Real Estate*

*Law in North Carolina* § 13-1, at 538 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999). This three-party arrangement differs from a two-party mortgage in which the conveyance is directly to the lender; here, the conveyance is to a trustee for the lender's benefit. *See id.* § 13-3, at 540-41. When the loan is repaid, the trustee cancels the deed of trust, restoring legal title to the borrower, who at all times retains equitable title in the property. *See id.* § 13-1, at 538.

In this case, as a result of the execution of a deed of trust for a second mortgage loan, equitable title in the property remained with plaintiffs; legal title was conveyed to nonparty trustee First Carolina Bank; and beneficial interest was ultimately held by the 1997-1 Trust. The beneficial interest held by the 1997-1 Trust does not constitute "use, ownership, control or possession" of the property.

This Court has not specifically addressed the application of N.C.G.S. § 1-75.4(6)(b) to a case such as this. However, our Court of Appeals has considered a factually similar case and concluded that our courts lacked personal jurisdiction. In *Whitener v. Whitener*, 56 N.C. App. 599, 289 S.E.2d 887, *disc. rev. denied*, 306 N.C. 393, 294 S.E.2d 221 (1982), the plaintiff, a North Carolina resident, brought an action seeking an accounting of payments received by his ex-wife on a purchase money note. *Id.* at 599, 294 S.E.2d at 888. The plaintiff argued that personal jurisdiction existed under N.C.G.S. § 1-75.4(6)(b), contending that the defendant derived benefit through her ownership of real estate in North Carolina. *Id.* at 601, 294 S.E.2d at 889. The plaintiff and the defendant sold the North Carolina property in question more than fifteen years before the action was filed and, as part of the sale, took a purchase money note secured by a deed of trust. *Id.* at 599, 294 S.E.2d at 888. At the time of the sale and thereafter, the defendant was domiciled in Florida where she received payments on the note sent from North Carolina. *Id.* On these facts, our Court of Appeals concluded that there was no personal jurisdiction. 56 N.C. App. at 602, 294 S.E.2d at 890.

*Whitener* is persuasive because it involved a deed of trust arrangement analogous to the one in this case with two important distinctions. In the instant case, the nonresident holding the beneficial interest under the deed of trust, the 1997-1 Trust, does not directly collect payments from North Carolina residents as the defendant in *Whitener* did. Further, the 1997-1 Trust did not participate in the transaction giving rise to the deed of trust as the *Whitener* defendant did by participating in the sale of her land. Thus,

the 1997-1 Trust's connections to North Carolina are even more tenuous than those of the defendant in *Whitener*.

As the Court of Appeals acknowledged in *Whitener*, exercising personal jurisdiction over a party who holds the beneficial interest in a deed of trust secured by North Carolina real property but has no other connections to this state would arguably violate due process requirements of the Fourteenth Amendment to the U.S. Constitution. *Id.* at 601-03, 294 S.E.2d at 889-90. Hence, the analysis under this provision of our long-arm statute blends to some extent with the next step in the personal jurisdiction inquiry: whether 1997-1 Trust has sufficient minimum contacts with North Carolina to comport with due process requirements.

## B. Due Process Analysis

Even assuming *arguendo* that North Carolina's long-arm statute authorizes jurisdiction over the 1997-1 Trust, exercise of that jurisdiction would violate due process requirements. To satisfy the due process prong of the personal jurisdiction analysis, there must be sufficient "minimum contacts" between the nonresident defendant and our state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278, 283 (1940)). This Court has stated:

> The concept of "minimum contacts" furthers two goals. First, it safeguards the defendant from being required to defend an action in a distant or inconvenient forum. Second, it prevents a state from escaping the restraints imposed upon it by its status as a coequal sovereign in a federal system.

*Miller v. Kite*, 313 N.C. 474, 477, 329 S.E.2d 663, 665 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

There are two types of personal jurisdiction. General jurisdiction exists when the defendant's contacts with the state are not related to the cause of action but the defendant's activities in the forum are sufficiently "continuous and systematic." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872-73, 80 L. Ed. 2d 404, 410-13 (1984). Specific jurisdiction exists when the cause of action arises from or is related to defendant's contacts with the forum. *See id.* at 414 n.8, 104 S. Ct. at 1872 n.8,

80 L. Ed. 2d at 411 n.8. Plaintiffs only argue that specific jurisdiction exists. This Court has noted that, for the purposes of asserting specific jurisdiction, "[o]ur focus should . . . be upon the relationship among the defendant, this State, and the cause of action." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986). We have also observed:

> Application of the "minimum contacts" rule "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Chadbourn, Inc. v. Katz*, 285 N.C. 700, 705, 208 S.E.2d 676, 679 (1974) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958)).

In this case, plaintiffs argue personal jurisdiction over the 1997-1 Trust exists on three bases: (1) Preferred Credit's origination of plaintiffs' loan in North Carolina; (2) deeds of trust on North Carolina property; and (3) loan payments sent from North Carolina. We address each of these "contacts" in turn.

First, the 1997-1 Trust did not exist at the time the loan in question was created. The loan originator, Preferred Credit, was the entity that solicited plaintiffs' business and executed the loan. This loan was sold to Credit Suisse who then assigned the loan to the 1997-1 Trust. Thus, the 1997-1 Trust is at least two steps removed from the North Carolina origins of this loan. Further, the 1997-1 Trust as an entity was not an active participant in either the loan execution or subsequent assignment. It was created as a passive depository for 3,537 loans, only 3% of which have ties to North Carolina. Moreover, its creation occurred outside of this state. Its day-to-day operations, which consist of its accounts and the office of its trustee DB Trust Co., are in New York.

Second, plaintiffs argue that by virtue of being assigned loans secured by deeds of trust on North Carolina property, the 1997-1 Trust has a significant enough contact with North Carolina to support jurisdiction. The interest held by the 1997-1 Trust is simply a beneficial interest in North Carolina property. It does not hold title to any North Carolina property; legal title is held by a trustee (for plaintiffs' deed of trust, First Carolina Bank), which has no relationship to the

1997-1 Trust apart from the deed of trust. Thus, the nature of this particular contact with North Carolina is insufficient to support jurisdiction, even as arguably the only "direct" contact the 1997-1 Trust has with North Carolina.

Third, the loan payments in question are not received directly by the 1997-1 Trust, but instead by a separate servicer, Chase. In essence, the 1997-1 Trust serves as the depository for income derived, in part, from North Carolina loans. More importantly, plaintiffs did not make Chase a party to this action. Plaintiffs' allegations stem from the execution of the original loan, not the manner in which Chase is collecting or allocating payments.

Our cases analyzing minimum contacts rarely have dealt with so "passive" a defendant. However, we have acknowledged that passivity can result in a lack of jurisdiction even when there is a very direct, intentional contact. In *United Buying Group, Inc. v. Coleman*, 296 N.C. 510, 251 S.E.2d 610 (1979) we found that a defendant who signed a conditional promissory note, which was the subject of the action, to a North Carolina company, but had no other contacts with the state, had insufficient contacts to support personal jurisdiction. *Id.* at 518, 251 S.E.2d at 616. Although the defendant could have anticipated being sued in North Carolina, this Court concluded the fact that the defendant's only contact was signing a note to guarantee a debt owed to a North Carolina company, which "his brother . . . happened to be doing business with," was inadequate to exercise personal jurisdiction over him. *Id.* at 571, S.E.2d at 615. Thus, even though the defendant signed a note that created a relationship with North Carolina residents, we could not automatically exercise personal jurisdiction. Here, the 1997-1 Trust is more passive an "actor" than the defendant in *United Buying Group*. The trust exists as an entity created for the purpose of being assigned income from mortgage notes, some of which happen to be secured by North Carolina property.

Additionally, we note that other jurisdictions have considered similar facts and concluded that there was no personal jurisdiction over the defendants. In fact, one such case involved the same defendant as the present action. The United States District Court for the Western District of Tennessee held that Tennessee lacked personal jurisdiction over the 1997-1 Trust. *See Frazier v. Preferred Credit*, No. 01-2714 GB, 2002 WL 31039856, at *10 (W.D. Tenn. July 31, 2002) (unpublished) (referring to the 1997-1 Trust as part of the collective "First Boston Trusts"). In conducting its due process analysis, the court noted the plaintiffs failed to point to any evidence in the record

SKINNER v. PREFERRED CREDIT

[361 N.C. 114 (2006)]

regarding the 1997-1 Trust's contacts with Tennessee and resolved the jurisdiction question over the 1997-1 Trust in that manner. *Id.* at *7. However, the court did analyze the facts of similar trusts, noting the plaintiffs alleged the following contacts supported personal jurisdiction over those defendants: "defendants' purchase of at least seventy-four second mortgage loans secured by property held by Tennessee residents; defendants' receipt of income from these mortgages; and defendants' holding of notes secured by mortgages from Tennessee residents secured by real property located within the state." *Id.* at *6 (citations omitted). Concluding it lacked jurisdiction over the defendants, the court in *Frazier* cited facts essentially indistinguishable from the instant case, including that "an independent servicer has exclusive power to perform all acts in connection with administering the loans, including collecting payments and enforcing performance of or seeking remedies with respect to the loans." *Id.* The United States District Court for the Western District of Tennessee has reached the same result in other cases. *See Williams v. Firstplus Home Loan Owner Trust,* 310 F. Supp. 2d 981 (W.D. Tenn. 2004); *Mull v. Alliance Mortgage Banking Corp.,* 219 F. Supp. 2d 895 (W.D. Tenn. 2002); *Street v. PSB Lending Corp.,* No. 01-2751 GV, 2002 WL 1797773 (W.D. Tenn. July 31, 2002) (unpublished); *Berry v. GMAC-Residential Funding Corp.,* No. 01-2713 GB, 2002 WL 1797779 (W.D. Tenn. July 31, 2002) (unpublished).

Similarly, the United States District Court for the District of Kansas held it did not have personal jurisdiction over nonresident assignees in an action brought by consumers claiming that second mortgages violated provisions of the Kansas Uniform Consumer Credit Code. *See Pilcher v. Direct Equity Lending,* 189 F. Supp. 2d 1198 (D. Kan. 2002) (mem.). Another federal district court reached the same conclusion under relevant Michigan statutes. *Mazur v. Empire Funding Home Loan Owner Trust 1997-3,* No. 03-CV-74103-DT (E.D. Mich. Jan. 9, 2004) (unpublished).

Other jurisdictions have indicated a reluctance to exercise personal jurisdiction over nonresident trusts based on actions by the loan originator. *Barry v. Mortgage Servicing Acquisition Corp.,* 909 F. Supp. 2d 65, 74 (D.R.I. 1995) ("Here, there is no evidence to suggest that [the defendant trust] had anything to do with the origination of this loan. Thus, [the originating mortgagee's] origination of the loan in Rhode Island is irrelevant to [the defendant trust's] contacts with the state."); *see also Rogers v. 5-Star Mgmt., Inc.,* 946 F. Supp. 907, 912 (D.N.M. 1996) (mem.) (" '[T]he unilateral activity of parties other than

the non-resident defendant cannot satisfy the requirement of the defendant's contact with the forum state.' " (quoting *Barry*, 909 F. Supp. at 74)). While these cases from other jurisdictions are certainly not controlling on this Court, they persuasively support our conclusion on the personal jurisdiction issue.

Two federal courts have found personal jurisdiction in cases with seemingly similar facts, but these cases are distinguishable. In *Easter v. American West Financial*, 381 F.3d 948 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit found it had, under Washington state law, personal jurisdiction over trusts similar to the 1997-1 Trust. *Id.* at 960-61. As is true for the 1997-1 Trust, the trusts in *Easter* were the beneficiaries of deeds of trust for real property located in the forum state, and the trusts ultimately received money from forum state residents. *Id.* at 961. However, in *Easter*, the borrowers' actions arose "out of the Trust Defendants' contacts with the forum because the suit [was] for recovery of the allegedly excessive *interest payments* Borrowers made on their notes." *Id.* (emphasis added). There is an important distinction between an allegation of a usurious interest rate which is collected over the life of the loan and that of illegal origination fees which are charged at closing. In *Easter*, the borrowers' actions arose out of interest payments that were paid while the defendant trusts were beneficial owners of the deeds of trust. The defendant trusts received payments that included usurious interest. In this case, the plaintiffs' cause of action arose out of allegedly usurious fees paid at closing, before the 1997-1 Trust was created. As such, the rationale of the Tennessee, Kansas, and Michigan cases is more applicable.

Likewise, *Johnson v. Long Beach Mortgage Loan Trust*, 451 F. Supp. 2d 16 (D.D.C. 2006) (mem.), a District of Columbia federal district court case relying on *Easter* to find personal jurisdiction over a nonresident trust, is distinguishable. *Johnson* concerned a dispute over the validity of the security interest created by a mortgage, not whether origination fees paid at closing were usurious. *Id.* at 33 (distinguishing *Pilcher*, discussed above, by noting that because the essence of the plaintiffs' case was illegally charged interest and fees, "[t]he cause of action in *Pilcher* might therefore not be said to arise out of or relate to the trusts' interests in Kansas real property").

On the facts in this case, the 1997-1 Trust lacks sufficient minimum contacts to meet the due process requirements for personal jurisdiction. In terms of fairness, it is important to note that the

**SKINNER v. PREFERRED CREDIT**

[361 N.C. 114 (2006)]

1997-1 Trust can be sued elsewhere. The 1997-1 Trust admits in its brief that personal jurisdiction exists in New York, where it maintains its office and accounts. We also acknowledge our state's public interest in enforcing its consumer protection laws, but this Court has observed, in a case involving the important interest of enforcing child support obligations, that "[a]bsent the constitutionally required minimum contacts, . . . this interest will not suffice to make North Carolina a proper forum in which to require the defendant to defend the action." *Miller*, 313 N.C. at 480, 329 S.E.2d at 667 (citing *Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 100-01, 98 S. Ct. 1690, 1701, 56 L. Ed. 2d 132, 146-47 (1978)).

## III. CONCLUSION

We hold that North Carolina courts lack personal jurisdiction over a nonresident trust that has no connections to this state other than holding mortgage loans secured by deeds of trust on North Carolina property. Because we decide this case based on personal jurisdiction, it is unnecessary to address when the statutes of limitations for plaintiffs' claims began to run. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice TIMMONS-GOODSON dissenting.

As the majority notes, this case presents an issue of first impression. Regrettably, the Court's decision today aids in the exploitation of our state's most vulnerable citizens. By placing the out-of-state assignee trusts beyond the reach of our long-arm statute, the majority's decision effectively undermines the right of unwitting victims of predatory lending practices in the second mortgage industry to sue the holders of their second mortgage loans in courts in this state. Citizens of North Carolina who enter into mortgage contracts in North Carolina that are secured by real property located in North Carolina have a right to seek the protections of North Carolina law concerning the mortgage contracts *in the courts of North Carolina.*

For the reasons stated below, I respectfully dissent from the majority's decision. I would hold that courts of this state have personal jurisdiction over defendant, an out-of-state assignee holding second mortgages secured by North Carolina property.

## I. BACKGROUND

On 22 January 1997, the Skinners closed on their second mortgage loan with Preferred Credit Corporation. The loan was secured by a deed of trust on plaintiffs' residence. The deed of trust provides: "The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located."

Preferred Credit Corporation sold thousands of second mortgage loans to Credit Suisse First Boston Mortgage Securities Corp. (First Boston) with the plan to create a trust in which to deposit the loans. Pursuant to a pooling and servicing agreement (PSA) between Preferred Credit Corporation, First Boston, and others, 114 loans executed in North Carolina with an aggregate value of over $4 million were deposited into a trust, Preferred Credit Asset-Backed Certificates, Series 1997-1 (defendant or Trust). The aggregate unpaid principal balance of all loans collected in the trust fund was almost $131 million.

Under the PSA, First Boston assigned all of its rights and remedies against Preferred Credit Corporation to the Trust. The Trust holds mortgage notes, receives income from the mortgage loans, distributes payments received from the servicer to holders of certificates representing ownership interests in the Trust, and issues certificates under the terms of the PSA.

The loans collected in the Trust fund were used to back securities (in the form of "certificates") sold to individuals and entities who wished to invest in the loan pool. The prospectus provided to investors in the Trust states:

> Applicable state laws generally regulate interest rates and other charges and require certain disclosures. In addition, other state laws, public policy and general principles of equity relating to the protection of consumers . . . may apply to the origination, servicing and collection of the Mortgage Loans. . . . [V]iolations of these laws, policies and principles may limit the ability of the Servicer to collect all or part of the principal of or interest on the Mortgage Loans, may entitle the borrower to a refund of amounts previously paid and, in addition, could subject the owner of the Mortgage Loan to damages and administrative enforcement.

Bankers Trust Company, n/k/a Deutsche Bank Trust Company Americas, was named and appointed trustee of the Trust pursuant to the PSA. The trustee has physical custody of the second mortgage

[361 N.C. 114 (2006)]

notes or deeds of trusts and is located in California. The trustee administers the Trust for the benefit of certificate holders.

Advanta Mortgage Corp. USA (Advanta) was the original servicer under the PSA. Advanta subsequently transferred its servicing rights and responsibilities to Chase Manhattan Mortgage Corporation (servicer). The servicer sends statements to mortgagors from its offices in California and receives payments on the loans at its offices in California. The servicer remits the payments, minus a servicing fee, to the trustee of the Trust.

The PSA and powers of attorney executed by the trustee of the trust authorize the servicer to foreclose on the property securing the mortgage loans in the event of a default. Despite defendant's ability to avail itself of the benefits of North Carolina law in the event of a default by a debtor, the majority's decision insulates defendant from its potential liability in this state.

## II. PERSONAL JURISDICTION

In order to resolve the jurisdictional issue, the Court must determine: (1) whether the statutes of North Carolina permit courts of this state to entertain this action against defendant; and (2) whether the exercise of personal jurisdiction by courts in this state violates due process. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 675, 231 S.E.2d 629, 630 (1977).

At least two sections of N.C.G.S. § 1-75.4 permit the exercise of personal jurisdiction in the instant case. N.C.G.S. § 1-75.4, frequently referred to as North Carolina's long arm statute, is to be liberally construed to permit courts of this state to exercise in personam jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. *See, e.g.,* *Dillon*, 291 N.C. at 676, 231 S.E.2d at 630 ("By the enactment of [N.C.G.S.] § 1-75.4(1)(d), it is apparent that the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process.").

N.C.G.S. § 1-75.4(1)(d) provides one basis for the exercise of in personam jurisdiction in the instant case. Pursuant to section 1-75.4(1)(d), a court of this state that has jurisdiction over the subject matter of an action may assert personal jurisdiction over a nonresident defendant that "[i]s engaged in substantial activity within this state, whether such activity is wholly interstate, intrastate, or otherwise." N.C.G.S. § 1-75.4(1)(d).

This Court last addressed whether a defendant was engaged in substantial activity in this state pursuant to N.C.G.S. § 1-75.4(1)(d) in *Dillon*, 291 N.C. 674, 231 S.E.2d 629. In that case, the defendant, with its principal place of business in New York, actively and regularly solicited orders for its coins from residents of this state during a twenty-one month period. *Id.* at 679, 231 S.E.2d at 632. The defendant made several mass mailings to North Carolinians and sold coins with a total value of over $50,000 to 27 different residents in one hundred forty-two separate transactions. *Id.*

In the instant case, defendant is the beneficiary of 114 deeds of trust, and payment on the loan notes owned by defendant is secured by North Carolina realty. The real property involved has an aggregate value of over $4 million. Certainly, if the defendant in *Dillon* engaged in substantial activity in North Carolina when the transactions in that case involved the sale of coins, there is substantial activity in the instant case in which the transactions involve real property located in North Carolina.

The majority goes to great lengths to highlight that the North Carolina loans held by defendant comprise only 3% of all loans held by defendant. Respectfully, this fact is of little import in assessing personal jurisdiction. I have found no North Carolina case that grants special consideration to the percentage of a non-resident corporation's total business in the forum state in assessing the issue of personal jurisdiction. Courts in other jurisdictions have considered "whether percentages of a non-resident corporation's total business in a forum state should be given special consideration" in determining the issue of personal jurisdiction. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 708 (8th Cir. 2003). In *Lakin*, the court concluded the "relevant inquiry is not whether the percentage of a company's contacts is substantial for that company; rather, our inquiry focuses on whether the company's contacts are substantial for the *forum.*" *Id.* at 709. The court concluded it had general personal jurisdiction over defendant Prudential Securities even though the home-equity loans and lines of credit in Missouri, the forum state, constituted only one percent of the defendant's total loan portfolio. *Id.* at 708, 714.

The Court of Appeals for the Third Circuit also considered the relevance of the percentage of a non-resident corporation's total business in a forum state to the issue of personal jurisdiction in *Provident National Bank v. California Federal Savings & Loan Association*, 819 F.2d 434 (3d Cir. 1987). In *Provident*, the Pennsylvania-based plaintiff sued the defendant, a federally-chartered bank with head-

SKINNER v. PREFERRED CREDIT

[361 N.C. 114 (2006)]

quarters in California, in Pennsylvania. *Id.* at 435-6. The defendant had no Pennsylvania office, employees, agents, mailing address, or telephone number. *Id.* at 436. The defendant had not applied to do business in Pennsylvania, did no advertising in Pennsylvania and paid no taxes in Pennsylvania. *Id.* The defendant had about $10 million in outstanding loans with Pennsylvania residents but the loans amounted to only .083% of defendant's total loan portfolio of $12 billion. *Id.* The court concluded, "the size of the percentage of [defendant's] total business represented by its Pennsylvania contacts is generally irrelevant." 819 at 438.

In the instant case, the mortgage contracts held by defendant bind over 100 North Carolina families to tender in excess of $4 million in payments to the Trust. I submit that this is substantial activity for North Carolina. Not only are defendant's contacts with North Carolina substantial, they are continuous. The mortgages "are not single point-of-sale transactions. Rather the terms of these loans are typically measured in months and years—creating continuous long-term contacts with" the forum state. *Lakin*, 348 F.3d at 708.

The majority also notes that the Trust was created after plaintiffs executed their loan. The assignment, however, does not wipe away jurisdiction. As assignee, defendant stands in the place of its assignor. *See Rose v. Vulcan Materials Co.*, 282 N.C. 643, 664, 194 S.E.2d 521, 535 (1973); *Auto Fin. Co. of N.C. v. Wash Simmons & Weeks Motors, Inc.*, 247 N.C. 724, 728, 102 S.E.2d 119, 122 (1958) ("[T]he rule is that a note tainted with usury retains the taint in the hands of a subsequent holder." (Citations omitted)); *Turner v. Beggarly*, 33 N.C. 241, 243, 11 Ired. 331, 333-34 (1850); *Smith v. Brittain*, 38 N.C. 272, 279, 3 Ired. Eq. 347, 354 (1844). Defendant assumed all of the rights, benefits, obligations, and liabilities of the assignor when it accepted assignment of the mortgage loans.

The majority also emphasizes that defendant's trustee's day-to-day operations are in New York and that defendant has no offices or employees in North Carolina. As recognized by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), such circumstances are not dispositive of the personal jurisdiction question. In that case, the Court found that personal jurisdiction was appropriate even though "[a]ppellant ha[d] no office in Washington and ma[de] no contracts either for sale or purchase of merchandise there. It maintain[ed] no stock of merchandise in that state and ma[de] there no deliveries of goods in

intrastate commerce." *Id.* at 313. The Court held that International Shoe Co. was subject to personal jurisdiction in the State of Washington. *Id.* at 320.

N.C.G.S. § 1-75.4(6)(b) also provides a basis for the exercise of personal jurisdiction over defendant in the instant case. The statute asserts that courts of this state having subject matter jurisdiction may exercise personal jurisdiction "[i]n any action which arises out of . . . [a] claim to recover for any benefit derived by the defendant through the use, ownership, control or possession by the defendant of tangible property situated within this State either at the time of the first use, ownership, control or possession or at the time the action is commenced." N.C.G.S. § 1-75.4(6)(b).

Defendant controls an interest in real property located in this state because defendant holds a note secured by a deed of trust of North Carolina realty. Under the deed of trust, legal title to the property is being held by a trustee for defendant's benefit until the indebtedness is extinguished. *See* James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 13-1, at 538 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999). Defendant receives monthly payments on the mortgage loan and may enforce repayment of the loan using the laws of this state. This cause of action concerns the amount of the origination fees charged in connection with the loan.

The majority considers *Whitener v. Whitener*, 56 N.C. App. 599, 289 S.E.2d 887, *disc. rev. denied*, 306 N.C. 393, 294 S.E.2d 221 (1982), as analogous to the instant case; however, *Whitener* is distinguishable. Before their divorce, the parties in *Whitener* sold a parcel of real estate located in North Carolina and took a purchase money note secured by a deed of trust for it. 56 N.C. App. at 599, 289 S.E.2d at 888. The defendant had been domiciled in Florida since the property in North Carolina was sold. The plaintiff, domiciled in North Carolina, brought an action to enforce an accounting by the defendant of monies she received in Florida as payments on the purchase money note. *Id.* The court in *Whitener* held that the exercise of personal jurisdiction over defendant by courts of this state did not comport with due process because there was no relationship between the property in North Carolina and the controversy between the parties. 56 N.C. App. at 602, 289 S.E.2d at 889-90. A fundamental distinction between *Whitener* and the instant case is that the cause of action in *Whitener* was for an *accounting of monies payable* and did not con-

cern the property in North Carolina. In the instant case, the controversy directly relates to the property in North Carolina because it concerns the charge for origination fees for a loan secured by the property. I would hold that both N.C.G.S. §§ 1-75.4 (1)(d) and (6)(b) allow courts of this state to assert *in personam* jurisdiction over defendant.

The second inquiry in the jurisdictional analysis is whether the exercise of in personam jurisdiction over defendant by courts of this state would violate due process of law under the United States Constitution. As the majority notes, plaintiffs argue that North Carolina has specific jurisdiction over defendant (or, that defendant's contacts with North Carolina serve as the basis for plaintiffs' cause of action). *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The United States Supreme Court articulated the standard for determining whether the exercise of personal jurisdiction over a nonresident defendant comports with due process in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). "[D]ue process requires only that in order to subject a [nonresident] defendant to a judgment *in personam*, . . . he have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940), *superseded by statute*, Fed. R. Civ. P. 60(b) (amended 1946)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A crucial factor is whether the defendant had reason to expect that he might be subjected to litigation in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Defendant has purposefully availed itself of the privileges of conducting business with North Carolina residents, thus invoking the benefits and protections of North Carolina law. Defendant holds at least 114 loan notes executed in North Carolina and secured by deeds of trust that provide on their face that North Carolina law applies. By accepting assignment of the loans secured by North Carolina realty, defendant had every reason to expect that it might be subjected to litigation in North Carolina. The transaction by which defendant became holder of plaintiffs' mortgage note clearly anticipates that defendant would be subject to personal jurisdiction in this state. The prospectus provided to investors in the Trust clearly states:

**SKINNER v. PREFERRED CREDIT**

[361 N.C. 114 (2006)]

Applicable state laws generally regulate interest rates and other charges and require certain disclosures. In addition, other state laws, public policy and general principles of equity relating to the protection of consumers . . . may apply to the origination, servicing and collection of the Mortgage Loans. . . . [V]iolations of these laws, policies and principles may limit the ability of the Servicer to collect all or part of the principal of or interest on the Mortgage Loans, may entitle the borrower to a refund of amounts previously paid and, in addition, could subject the owner of the Mortgage Loan to damages and administrative enforcement.

Defendant's actions constitute a purposeful invocation of the benefits and protection of North Carolina's laws. By purchasing loan notes secured by property situated in North Carolina, defendant agreed to the application of North Carolina law in the enforcement of the provisions of the loan agreements. As the U.S. Supreme Court said in *Burger King Corp. v. Rudzewicz*, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." 471 U.S. 462, 474 (1985). Defendant should not be insulated from the assertion of in personam jurisdiction. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [this Court should] . . . reject[] the notion that an absence of physical contacts can defeat personal jurisdiction [here]." *Id.* at 476 (citations omitted).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). In *World-Wide Volkswagen*, the Supreme Court listed the following factors as relevant considerations: (1) "the forum State's interest in adjudicating the dispute"; (2) "the plaintiff's interest in obtaining convenient and effective relief"; (3) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (4) "the shared interest of the several States in furthering fundamental substantive social policies." 444 U.S. at 292 (citations omitted). The Supreme Court has recognized that:

These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum

residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Burger King*, 471 U.S. at 477 (citations omitted).

North Carolina has a strong interest in adjudicating this dispute. As noted above, defendant is the mortgagee of at least 114 loans to North Carolina residents with an aggregate value of over $4 million. The loan agreements were initiated in North Carolina, and the deeds of trust explicitly state North Carolina law governs the mortgage. The property encumbering the loans is situated in this state. North Carolina has a " 'manifest interest' " in enforcing the laws of the state and protecting its residents in making contracts with others who enter the state for that purpose. *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 367, 348 S.E.2d 782, 787 (1986) (citing *Burger King*, 471 U.S. at 473).

The majority cites *Frazier v. Preferred Credit*, 2002 WL 31039856 (W.D. Tenn. July 31, 2002) No. 01-2714 GB (unpublished) as persuasive on the issue of personal jurisdiction. *Frazier* is one of several opinions of the United States District Court for the Western District of Tennessee rendered on the same day concerning whether courts in Tennessee could exercise personal jurisdiction over several trust defendants. The other opinions include *Brooks v. Terra Funding, Inc.*, 2002 WL 1797785 (W.D. Tenn. July 31, 2002) No. 01-2946 GV (unpublished); *Berry v. GMAC-Residential Funding Corp.*, 2002 WL 1797779 (W.D. Tenn. July 31, 2002) No. 01-2713 GB (unpublished); and *Street v. PBS Lending Corp.*, No. 01-2751 GV, 2002 WL 1797773 (W.D. Tenn. July 31, 2002) (unpublished). In *Frazier, Brooks, Berry,* and *Street,* the plaintiffs filed suit on behalf of themselves and other persons similarly situated against the holders or assignees of second mortgage notes. Plaintiffs alleged the mortgage notes violated Tennessee's laws concerning interest rates, loan origination fees, loan brokerage commissions, and other loan charges. In each of the four cases, the court determined that it lacked specific personal jurisdiction over the defendants because plaintiffs did not allege "which, if any, defendants actually h[e]ld their second mortgage loans. They merely assert[ed] '[u]pon information and belief, [that defendants were] currently a holder of certain of the second mortgage loan notes made to class members.' " *Frazier*, 2002 WL 31039856, at *7; *Brooks*, 2002 WL 1797785 at *9; *Berry*, 2002 WL 1797779 at *8; *Street*, 2002 WL 1797773 at 12.

SKINNER v. PREFERRED CREDIT

[361 N.C. 114 (2006)]

Under nearly identical circumstances as those in the instant case, the Ninth Circuit Court of Appeals in *Easter v. American West Financial*, 381 F.3d 948, 961 (9th Cir. 2004), concluded the courts of Washington could exercise personal jurisdiction over several trusts holding second mortgage notes secured by Washington realty. In *Easter*, the court stated:

> Here, the Trust Defendants have availed themselves of the protections of Washington law because they are beneficiaries of deeds of trust[] which hypothecate Washington realty to secure payments on notes owned by the Trust Defendants. The deeds of trust convey a property interest in Washington realty, which interest the Trust Defendants expect Washington law to protect. . . . [H]olding a deed of trust 'represents a significant contact with [the forum].' The Trust Defendants also receive money from Washington residents, albeit routed through the loan servicing companies who actually bill the payors. The Trust Defendants' income stream is derived from loans negotiated and executed in Washington and made to Washington residents.

*Id.* (footnote call number omitted) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990).

Likewise, in the instant case, defendant has availed itself of the protections of North Carolina law because it is the beneficiary of deeds of trust which hypothecate North Carolina realty to secure payments on notes owned by defendant. The deeds of trust convey a property interest in North Carolina realty, which interest defendant expects North Carolina law to protect. Defendant also receives money from North Carolina residents, albeit routed through the loan servicing company that bills the payors. Defendant's income stream is derived from loans negotiated and executed in North Carolina and made to North Carolina residents. Defendant has purposefully availed itself of the privilege of doing business in North Carolina and should be subject to personal jurisdiction in North Carolina. To hold otherwise unnecessarily cedes our responsibility to protect the citizens of North Carolina.

Justices MARTIN and EDMUNDS join in this dissent.