IN THE SUPREME COURT OF NORTH CAROLINA

No. 360A18

Filed 28 February 2020

BEEM USA LIMITED-LIABILITY LIMITED PARTNERSHIP and STEPHEN STARK

v.

GRAX CONSULTING LLC

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from orders entered on 13 August 2018 and 4 September 2018, by Judge Michael L. Robinson, Special Superior Court Judge for Complex Business Cases, in Superior Court, Orange County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(a). Heard in the Supreme Court on 27 August 2019.

> *Williams Mullen, by Camden R. Webb and Lauren E. Fussell, for plaintiffs-appellants.*
>
> *No brief for defendant-appellee Grax Consulting, LLC.*

DAVIS, Justice.

In this case, we consider the question of whether a nonresident company's contacts with North Carolina were sufficient to permit the exercise of personal jurisdiction over it in the courts of our state. Because we conclude that the exercise of personal jurisdiction over defendant does not trigger due process concerns, we reverse the orders of the Business Court and remand for further proceedings.

## Factual and Procedural Background

The complaint in this action alleges the following facts: Grax Consulting LLC

(Grax) is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business in Fort Mill, South Carolina. Stephen Stark is a resident of Chapel Hill, North Carolina. On or about 22 February 2015, Grax and Stark signed an agreement to form Beem USA, Limited-Liability Limited Partnership (Beem), an entity created under the laws of the State of Nevada for the purpose of providing information technology services.

On 1 January 2016, Stark and Grax executed a "First Amended and Restated Limited-Liability Limited Partnership Agreement" (the partnership agreement) that set forth the rights, duties, and obligations of the parties and established that the partnership would terminate on 31 December 2016, unless terminated sooner pursuant to the provisions of the partnership agreement.

Grax, acting through its owner Mason Shane Boyd, was named the general partner and an initial limited partner of Beem, possessing a ten percent ownership interest in the partnership. Stark, individually, was named an initial limited partner with a ninety percent ownership interest in Beem. Stark and Grax were the only limited partners of Beem during its existence.

The partnership agreement provided, in part, that in the event the general partner took action, or failed to take action, so as to cause material, adverse consequences to Beem and the act or omission was fraudulent, in bad faith, or in breach of the general partner's fiduciary duty, the limited partner or partners holding a majority of the ownership interests in Beem could remove the general partner and

elect a new one.

Throughout the short lifespan of Beem, Grax and Stark would frequently collaborate on matters relating to the partnership. Boyd traveled to North Carolina on three separate occasions to meet with Stark to discuss the business of Beem and, on at least one of those occasions, to meet with Beem's banker. These meetings occurred on 28 September 2015, 26 August 2016, 27 August 2016, and 9 November 2016.

In addition, in February 2015, Boyd—acting on behalf of Grax—drove to Charlotte to open a bank account for Beem at Bank of America. Using this account, Grax would regularly deposit checks received by Beem and initiate wire transfers on behalf of the partnership. Over the course of 2016, while living in North Carolina, Stark received approximately fifteen e-mails, fifteen text messages, and seven phone calls per month from Grax relating to the partnership. Grax also mailed Stark financial records, tax documents, and other correspondence relating to Beem.

On or about 5 December 2016, Stark removed Grax as the general partner of Beem pursuant to the terms of the partnership agreement and assumed the role himself. Grax was given notice of its removal as general partner by means of both electronic communication and a letter sent to its principal place of business.

The partnership agreement expressly stated that no limited partner, unless also serving as general partner, was permitted to act on behalf of or bind Beem. Nevertheless, despite its removal as general partner, Grax—through Boyd—

continued to act on Beem's behalf. Specifically, Grax (1) continued to bill and charge Beem for services that Grax purportedly provided for Beem after its removal as general partner; (2) changed the online bank account access information for Beem's Bank of America partnership account and prevented Stark, the new general partner, from accessing the account; (3) acquired a cashier's check for $3,500 from the Bank of America account without Stark's permission; and (4) filed tax documents with the Internal Revenue Service on behalf of Beem. Furthermore, Grax repeatedly failed to provide Stark with Beem's financial, accounting, banking, tax, and other records, despite requests from Stark for this information.

Following the partnership's dissolution on 31 December 2016, Stark attempted to wind up the business affairs of Beem but was unable to do so due to Grax's failure to provide Stark with the partnership's business records. Stark was also precluded from filing accurate and complete tax documents on behalf of the partnership for 2016 because Grax withheld necessary information.

On 28 December 2017, Stark, on behalf of himself and Beem (collectively, plaintiffs), filed a complaint in Superior Court, Orange County, asserting claims against Grax for breach of contract and breach of fiduciary duty. The breach of contract claim was based on plaintiffs' allegation that Grax acted on behalf of Beem following its removal as general partner on 5 December 2016 despite lacking the authority to do so and in violation of the partnership agreement. The breach of fiduciary duty claim was premised on plaintiffs' assertion that Grax engaged in

misconduct as the general partner of Beem and breached its duty of care to the partnership—namely, that Grax failed to adequately maintain financial statements of the partnership from July 2016 until the date of Grax's removal as general partner and refused to relinquish to plaintiffs those statements that existed upon its removal as general partner.

In the complaint, plaintiffs sought an injunction, in part, directing Grax to turn over the documents and information necessary for plaintiffs to wind up the affairs of Beem and file tax documents on behalf of both Beem and Stark. The case was designated a mandatory complex business case pursuant to N.C.G.S. § 7A-45.4(a) and was assigned to the Honorable Michael L. Robinson, Special Superior Court Judge for Complex Business Cases.

After repeated failed attempts to personally serve Boyd, who was the registered agent for Grax, service of process was eventually effected on 3 February 2018. Plaintiffs filed a motion for entry of default on 6 March 2018 based on Grax's failure to file a responsive pleading to plaintiffs' complaint. On 23 April 2018, a default was entered against Grax. Plaintiffs subsequently filed a motion for default judgment on 10 May 2018.

N.C.G.S. § 1-75.11 provides, in relevant part, that before a trial court can enter a judgment against a defendant who fails to appear, it "shall require proof by affidavit or other evidence . . . of the existence of any fact not shown by verified complaint which is needed to establish grounds for personal jurisdiction over the defendant."

*See* N.C.G.S. § 1-75.11(1) (2017). In an effort to comply with the statute, plaintiffs filed an affidavit from Stark on 10 August 2018 that listed Grax's contacts with North Carolina.

On 13 August 2018, the Business Court issued an order denying plaintiffs' motion for default judgment based on its finding that plaintiffs had failed to satisfy their burden of proving that the court possessed personal jurisdiction over Grax. As an initial matter, the court found that Stark's affidavit was improper because it lacked "any vow of truthfulness on penalty of perjury." Moreover, the court further determined that the information contained in the affidavit was insufficient to satisfy N.C.G.S. § 1-75.11. In support of its ruling, the Business Court stated the following:

> Plaintiffs' claims arise out of Grax's conduct after he was removed as the general partner on December 5, 2016. Thus, Grax's contacts with North Carolina prior to this date do not create a basis for exercising specific jurisdiction over Grax. . . . The record shows that the only contacts Grax had with North Carolina from which Plaintiffs' claims arise are two letters from Grax addressed to Stark at his North Carolina address. These two letters do not amount to sufficient minimum contacts with North Carolina to support the exercise of personal jurisdiction over Grax.

On 22 August 2018, plaintiffs filed a document captioned "Plaintiffs' Motion for Reconsideration and for Amended and Additional Findings of Fact" along with a properly sworn version of Stark's previously filed affidavit and a new affidavit that provided additional information about Grax's contacts with North Carolina. The Business Court entered an order on 4 September 2018 containing additional findings

but once again denying plaintiffs' motion.

The court ruled that plaintiffs' breach of fiduciary duty claim did not "ar[ise] out of Grax's conduct in traveling to North Carolina to open Beem's bank account or depositing checks in or initiating wire transfers from North Carolina bank branches." Similarly, the court found that the "breach of fiduciary duty does not appear to have arisen from Grax's trips to North Carolina to discuss Beem's business with Stark or his phone calls, e-mails, and text messages to Stark in North Carolina." The Business Court concluded that "Plaintiffs' breach of fiduciary duty claim is premised on Grax's failures to maintain proper records beginning in July 2016—and nothing in the record reflects how such a breach arose out of any conduct directed at the forum state of North Carolina." Pursuant to N.C.G.S. § 7A-27(a)(2), plaintiffs gave notice of appeal from the Business Court's 13 August 2018 and 4 September 2018 orders.

## Analysis

The sole question for review in this appeal is whether Grax had sufficient minimum contacts with this state such that a North Carolina court could constitutionally exercise personal jurisdiction over it. Based on our thorough review of the record, we conclude that the orders of the Business Court must be reversed.

In examining whether a nonresident defendant is subject to personal jurisdiction in our courts, we engage in a two-step analysis. *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006). First, jurisdiction over the defendant must be authorized by N.C.G.S. § 1-75.4—North Carolina's long-arm

statute. *Id.* Second, "if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Id.*

## I. Long-Arm Statute

North Carolina's long-arm statute states, in pertinent part, that a court may exercise jurisdiction over a party if it "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C.G.S. § 1-75.4(1)(d) (2017). This Court has held that this statute is "intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977) (citation omitted).

Here, it is clear that Grax's contacts with North Carolina are sufficient to satisfy the long-arm statute. Thus, we must proceed to the second step of the analysis.

## II. Due Process

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 80 L. Ed. 2d 404, 410 (1984) (citing *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565 (1878)). The primary concern of the Due Process Clause as it relates to a court's jurisdiction over a nonresident defendant is the protection of "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no

meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 85 L. Ed. 2d 528, 540 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 90 L. Ed. 95, 104 (1945)). The United States Supreme Court has made clear that the Due Process Clause permits state courts to exercise personal jurisdiction over an out-of-state defendant so long as the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe*, 326 U.S. at 316, 90 L. Ed. at 102 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)).

Personal jurisdiction cannot exist based upon a defendant's "random, fortuitous, or attenuated" contacts with the forum state, *Walden v. Fiore*, 571 U.S. 277, 286, 188 L. Ed. 2d 12, 21 (2014) (quoting *Burger King*, 471 U.S. at 475, 85 L. Ed. 2d at 543), but rather must be the result of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Skinner*, 361 N.C. at 133, 638 S.E.2d at 217 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958)). As such, a defendant's contacts with the forum state must be such that a defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980); *see also Skinner*, 361 N.C. at 133, 638 S.E.2d at 217 ("A crucial factor is whether the

defendant had reason to expect that he might be subjected to litigation in the forum state.").

The United States Supreme Court has recognized two types of personal jurisdiction that can exist with regard to a foreign defendant: general (or "all-purpose") jurisdiction and specific (or "case-based") jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27, 187 L. Ed. 2d 624, 633–34 (2014) (citing *Helicopteros*, 466 U.S. at 414 nn.8–9, 80 L. Ed. 2d at 411 nn.8–9). General jurisdiction is applicable in cases where the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 180 L. Ed. 2d 796, 803 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317, 90 L. Ed. at 102). Specific jurisdiction, conversely, encompasses cases "in which the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 571 U.S. at 127, 187 L. Ed. 2d at 633–34 (2014) (alteration in original) (quoting *Helicopteros*, 466 U.S. at 414 n.8, 80 L. Ed. 2d at 411 n.8).

In the present case, plaintiffs do not assert that Grax is subject to suit in North Carolina based upon a theory of general jurisdiction. We therefore confine our analysis to whether personal jurisdiction exists in this case under the doctrine of specific jurisdiction.

Specific jurisdiction is, at its core, focused on the "relationship among the defendant, the forum, and the litigation." *Daimler*, 571 U.S. at 133, 187 L. Ed. 2d at

637 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698 (1977)). Some "affiliatio[n] between the forum and the underlying controversy" is required. *Walden*, 571 U.S. at 283 n.6, 188 L. Ed. 2d at 20 n.6 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919, 180 L. Ed. 2d at 803). The United State Supreme Court has emphasized that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (U.S. 2017) (quoting *Goodyear*, 564 U.S. at 919, 180 L. Ed. 2d at 803).

This Court applied the doctrine of specific jurisdiction in *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 348 S.E.2d 782 (1986). In that case, the plaintiff, a North Carolina clothing manufacturer, sued the defendant, a clothing distributor based in New York and New Jersey, for breach of contract in Superior Court, Wake County, due to defendant's refusal to pay for repairs to shirts it had purchased and subsequently returned to plaintiff. *Id.* at 362–63, 348 S.E.2d at 784–85. The defendant moved to dismiss based on lack of personal jurisdiction. On appeal, this Court held that the trial court could exercise specific jurisdiction over the defendant based on its contacts with North Carolina. *Id.* at 368, 348 S.E.2d at 787. We observed that "[a]lthough a contractual relationship between a North Carolina resident and an out-of-state party alone does not automatically establish the necessary minimum contacts" required for personal jurisdiction, "a single contract may be a sufficient basis for the exercise of [specific] jurisdiction if it has a substantial connection with

this State." *Id.* at 367, 348 S.E.2d at 786 (emphasis omitted).

In support of our holding in *Tom Togs* that personal jurisdiction existed, this Court noted that the contract was "made in North Carolina" and "substantially performed" here. *Id.* at 367, 348 S.E.2d at 786–87. We also found relevant the fact that the defendant was aware the shirts were to be cut in North Carolina and even sent its personal labels to the plaintiff in North Carolina so that they could be attached to the shirts. *Id.* at 367, 348 S.E.2d at 787. Furthermore, we observed that the shirts were manufactured in, shipped from, and eventually returned to North Carolina. Thus, we concluded that the defendant's connections with North Carolina relating to the contract satisfied the minimum contacts inquiry and established the existence of specific jurisdiction. *Id.* at 368, 348 S.E.2d at 787.

The United States Supreme Court has applied the doctrine of specific jurisdiction in two recent cases. While these cases—like *Tom Togs*—involved very different factual circumstances than the matter currently before us, they are nonetheless instructive. In *Bristol-Myers*, the defendant, a company incorporated in Delaware and headquartered in New York, contested personal jurisdiction in California for tort claims related to pharmaceuticals manufactured by the defendant that allegedly harmed plaintiffs, some of whom lived in states other than California. 137 S. Ct. at 1777–78. In analyzing whether the California court could exercise specific jurisdiction over the defendant, the Supreme Court stated that a link was required between the forum state and the nonresident plaintiffs' underlying cause of

action against the defendant—an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum." *Id.* at 1780 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919, 180 L. Ed. 2d at 803). Because the Supreme Court determined that the claims of the non-California plaintiffs were not affiliated with the forum state—the "nonresidents were not prescribed [the drug] in California, did not purchase [the drug] in California, did not ingest [the drug] in California, and were not injured by [the drug] in California"—it held that California lacked the necessary connection with the cause of action to establish personal jurisdiction over the defendant in that state under a theory of specific jurisdiction. *Id.* at 1781.

In *Walden*, the plaintiffs, Nevada residents, sued the defendant, a Georgia-based Drug Enforcement Administration (DEA) agent, in a Nevada federal district court for damages arising out of a seizure that plaintiffs alleged violated their Fourth Amendment rights. *Walden*, 571 U.S. at 281, 188 L. Ed. 2d at 18. While returning to Las Vegas from a gambling trip in Puerto Rico with nearly $100,000 in cash, the plaintiffs' flight was scheduled to make a layover in Atlanta, Georgia. Puerto Rico authorities notified the defendant's DEA task force at the Hartsfield-Jackson Atlanta International Airport that the plaintiffs were traveling to Atlanta with large amounts of cash. When the plaintiffs arrived in Atlanta, they were stopped by defendant and another DEA agent, and their funds were seized by the defendant. The money was ultimately returned to the plaintiffs approximately six months later. In response to

the plaintiffs' complaint, the defendant filed a motion to dismiss for lack of personal jurisdiction, which was granted by the district court. *Id.* at 280–81, 188 L. Ed. 2d at 17–18.

The Supreme Court held that the defendant lacked minimum contacts with Nevada such that the Nevada court could not exercise personal jurisdiction over him. *Id.* at 288, 188 L. Ed. 2d at 22. The Supreme Court observed that the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada. In short, when viewed through the proper lens—whether the *defendant's* actions connect him to the *forum*—[he] formed no jurisdictionally relevant contacts with Nevada." *Id.* at 289, 188 L. Ed. 2d at 23. The Supreme Court also recognized that although the injury to the plaintiffs—the lack of access to their funds—was suffered in Nevada, this fact was irrelevant to the minimum contacts analysis because it "is not the sort of effect that is tethered to Nevada in any meaningful way." *Id.* at 290, 188 L. Ed. 2d at 24.

* * *

Having reviewed these principles, we must now apply them to the facts presently before us. In so doing, it is clear that Grax's contacts with North Carolina—which all relate to its status as a partner in Beem—are sufficient to permit North Carolina courts to exercise specific jurisdiction over it, given that this litigation is concerned exclusively with the acts and omissions of Grax in connection with Beem's affairs.

It is undisputed that Grax purposefully availed itself of the benefits of North Carolina law for the specific purpose of carrying out the business of Beem. Grax's sole representative came to North Carolina to open a bank account on behalf of the partnership that Grax subsequently used for Beem's business activities, and he also traveled to this state on three separate occasions to discuss Beem's affairs with Stark. By virtue of its representative engaging in such conduct, Grax established an ongoing relationship with persons and entities located within this state such that it could reasonably anticipate being called into court here. *See Burger King*, 471 U.S. at 475–76, 85 L. Ed 2d at 543 ("Thus where the defendant . . . has created 'continuing obligations' between himself and residents of the forum he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (citations omitted)).

Additionally, Grax contacted Stark—who lived in North Carolina—numerous times each month for approximately a year in order to discuss Beem's affairs and sent mail related to Beem to Stark in Chapel Hill, North Carolina. *See Walden*, 571 U.S. at 285, 188 L. Ed. 2d at 21 ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." (citations omitted)).

The record makes abundantly clear the existence of numerous contacts by Grax with North Carolina that it made in its capacity as a partner of Beem, which goes to the heart of the present case. As a result, plaintiffs' claims alleging breach of the partnership agreement and breach of fiduciary duty "arise out of" or, at the very least, "relate to" Grax's contacts with North Carolina such that the doctrine of specific jurisdiction applies here. *Helicopteros*, 466 U.S. at 414, 80 L. Ed. 2d at 411.

Although the Business Court acknowledged Grax's contacts with North Carolina, it engaged in an exceedingly narrow analysis of the sufficiency of those contacts that finds no support in the caselaw of either the United States Supreme Court or this Court. The Business Court's inquiry required too strict a temporal connection between Grax's contacts with North Carolina and the specific claims asserted by plaintiffs in this case.[1] While the Business Court correctly recognized the need to examine Grax's contacts with North Carolina to ensure that they related to plaintiffs' claims against defendant, its orders aptly demonstrate the danger of missing the forest for the trees. Given that (1) Grax's contacts with North Carolina all related to Beem's partnership agreement and the implementation thereof, and (2) this case is wholly concerned with the conduct of Grax pursuant to that agreement, it simply cannot be said that subjecting Grax to suit in North Carolina would trigger

---

[1] Consideration of the entirety of Grax's contacts with North Carolina relating to Beem is particularly appropriate here given the relatively brief period of time in which Beem existed as a legal entity.

due process concerns.

Our holding today that personal jurisdiction exists in this case pursuant to the doctrine of specific jurisdiction is faithful to the United States Supreme Court's characterization of specific jurisdiction as being based on "case-linked" contacts. *See Bristol-Myers*, 137 S. Ct. at 1785–86. As discussed above, each of Grax's contacts with North Carolina concerned its status as a partner of Beem, which is the subject of the specific claims asserted by plaintiffs in this case.

## Conclusion

For the reasons set out above, we hereby reverse the 13 August 2018 and 4 September 2018 orders of the Business Court and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.